487 P.2d 569 (1971)
Bradford M. BEELER and Beeler Disbursements, Inc., a Colorado corporation, Plaintiffs in Error,
v.
H & R BLOCK OF COLORADO, INC., a Colorado corporation, H & R Block of Mountain States, Inc., a Colorado corporation, David S. Brewer, Danmac, Inc., an Arizona corporation, and Midwest Supply Company, Inc., a Colorado corporation, Defendants in Error.
No. 70-118. (Supreme Court No. 24577.)
Colorado Court of Appeals, Div. II.
March 16, 1971.
Rehearing Denied April 27, 1971.
Certiorari Denied August 9, 1971.
*570 Helmick, Evans & Conover, Frederic K. Conover, II, Denver, for plaintiffs in error.
Inman, Flynn & Coffee, Robert D. Inman, Denver, for defendants in error.
Not Selected for Official Publication.
PIERCE, Judge.
This case was originally filed in the Supreme Court of the State of Colorado and was subsequently transferred to the Court of Appeals under authority vested in the Supreme Court.
Plaintiffs in error are Bradford M. Beeler and a corporation which he controls, Beeler Disbursements, Inc.; both will be referred to collectively as Beeler. Defendants in error are David S. Brewer and several H & R Block franchise operations owned and controlled by Brewer in the Rocky Mountain area; they will be referred *571 to as Brewer or as the Brewer interests.
This lawsuit concerns three written contracts entered into in 1960, 1961, and 1966, between Beeler and the Brewer interests; but it specifically involves the validity and enforceability of the 1966 contract.
In 1959, David Brewer, a young accountant operating a small bookkeeping office and tax service in Denver, Colorado, acquired franchise rights to operate H & R Block tax preparation offices in the Rocky Mountain States from H & R Block, Inc. At that time, the national H & R Block corporation was only three years old.
Among Brewer's bookkeeping clients were Bradford M. Beeler and Beeler Disbursements, Inc. As a result of this association and his business and social relationships with Bradford Beeler, David Brewer became aware of Beeler's financial expertise and the surplus of cash available for loan and investment purposes flowing through the mortgage business. Brewer requested that Beeler, through his company and other sources, finance the expansion of Brewer's operation. A plan for financing the tax service was agreed to and in 1960 the parties executed the first of their three contracts. This agreement provided that Beeler would loan the Brewer interests certain sums of money as working capital for the development of H & R Block franchises over a three-year period of time. The Brewer interests would, in turn, repay the loan with interest at no more than 1% per month, plus certain specified percentages of their net profits.
In 1961, the parties executed the second contract which expressly cancelled and superseded the first agreement. Among the significant features of this second contract were: (1) a provision that the Brewer interests were "in need of certain advice and counsel from time to time" and that Beeler was "willing to offer and will stand by to furnish as requested such advice and counsel"; (2) a provision allowing Bradford M. Beeler to participate in any profit-sharing pension or retirement fund organized by the Brewer interest; (3) a provision obligating the Brewer interests to take out and keep in force a keyman life insurance policy on the life of Beeler; (4) a provision changing the formula of percentage payments to be made to Beeler by deriving them from gross receipts rather than net profits, and providing for a sliding scale which increased the percentage of gross receipts from a minimum of 1% in the years 1960 to 1961, to a maximum of 2¼% in 1966, and thereafter; and (5) a provision by which the existing balance on prior loans due as of September 30, 1961, was extended.
After the 1961 contract was signed, Beeler made additional loans to Brewer equalling, at one time, $30,000. All the loans were repaid with interest in May of 1963. In accordance with the 1961 contract, Beeler did, in fact, perform personal services for the Brewer interests, including membership on the Board of Directors of the Brewer companies and a number of business trips made on behalf of the Brewer interests.
By the end of May, 1963, Beeler exhausted his ability to provide further loans for business operations to Brewer and gave no further financial assistance to the Brewer interests after that date. Thereafter, Brewer and his associates arranged all financing themselves.
On January 4, 1966, a third contract was executed at the request of the Brewer interests who desired to reduce the percentage of gross receipts payable to Beeler. This agreement, expressly cancelling and superseding the previous contracts, did not require Beeler to continue to provide a line of credit to the Brewer interests; but like the 1961 contract, it required that Beeler continue to be available for advice and counsel upon request of the Brewer interests. In return, the Brewer interests were to pay Beeler 2% of their gross receipts rather than 2¼% as previously required, conditioned upon timely payment. The amounts were payable for the same length of time as provided in the previous contract, namely the lifetime of Beeler, plus *572 two years. Although the 1966 contract also showed Beeler Disbursements, Inc., as a party, the company had discontinued business in 1965, and failed to renew its lenders license after November 1, 1963.
In the fall of 1966, the Brewer interests entered into negotiations with H & R Block's national organization, resulting in a merger and consolidation of the two enterprises. During these negotiations, Brewer was advised that his 1966 contract with Beeler was illegal and unenforceable. As a result, he did not pay the insurance premium due on the Beeler keyman life insurance policy, and paid no more percentage fees to Beeler under that agreement.
Brewer then brought an action, stating three claims for relief: First, Brewer sought judgment for statutory treble damages for usurious interest paid to Beeler. Second, Brewer sought judgment for the return of usurious interest paid to Beeler under common law theory. The third claim sought a declaratory judgment that the 1966 contract was void and unenforceable, pursuant to the provisions of the Uniform Declaratory Judgment Act, as found in C.R.S.1963, §§ 77-11-1 through 77-11-15. Beeler counterclaimed for the partial breaches of the contract by the Brewer interests, requesting as damages those amounts required to be paid under the contract, and asking for an accounting of 2¼% of the Brewer interests' gross receipts from May, 1966, until the date of judgment. Beeler also prayed for interest at the legal rate on all amounts as they became due under the contract thereafter.
In its original findings, the trial court determined that each contract cancelled and superseded the prior contract; that the percentage fees paid to Beeler by Brewer were not usurious; and that the 1966 contract was valid and enforceable. The court further required an accounting of gross receipts earned by the Brewer interests to the date of judgment. An accounting, upon which the court based its entry of judgment against Brewer, was thereafter submitted.
Brewer filed a motion for new trial, following which the court granted a rehearing. The court then amended its findings of fact and conclusions of law and entered a new judgment. In this final order, the trial court adhered to the previous ruling that there was no usury; but reversed itself in regard to the validity of the 1966 contract, finding that the agreement was without adequate consideration, imposed no obligation on Beeler, was terminable at will, and had been terminated. The court entered a judgment for Brewer on the Beeler counterclaim and vacated the previous judgment.
Plaintiff in error, Beeler, brings this appeal, alleging that the court erred in its amended findings of fact and conclusions of law declaring that the 1966 contract was no longer valid. On their cross-appeal, the Brewer interests assign as error the trial court's finding that the requirement to pay both interest and a percentage of gross receipts was not usurious interest.

I.
The trial court made extensive findings on the issue of usury. It found that when Brewer first conceived the idea of expanding his business, he could not get financing from commercial banks. The Beeler interests thus provided financing in a situation in which a commercial bank was not interested. The court further found that at the time of the signing of the first two contracts, there was no anticipation that Brewer's business would expand so fast or succeed at all. It was what might be called a "speculation" or a "gamble."
An agreement is not ipso facto usurious because of the mere possibility that more than the legal interest will be paid. It is the general rule that "a loan in consideration of a share in profits, income, or earnings, in lieu of, or in addition to, interest, is not usurious, in the absence of certainty that the arrangement would produce *573 a return in excess of the legal rate of interest, though the principal is to be repaid in any event." Annot., Agreement for Share in Earnings of or Income from Property in Lieu of, or in Addition to, Interest as Usurious, 51 A.L.R. 552. In M. Lowenstein & Sons, Inc. v. British-American Mfg. Co., 2d Cir., 7 F.2d 51, the court stated:
"* * * Usury cannot be established unless there be shown a definite agreement to pay, in any event, an amount in excess of the legal rate of interest, and where, as here, the legal rate of interest is less, an agreement to pay additional sums which may or may not make the amount greater, would not of itself render the transaction usurious."
See Schiff v. Pruitt, 144 Cal.App.2d 493, 301 P.2d 446.
Under the facts in this case, the trial court correctly determined that the contracts in question were not usurious.

II.
The trial court determined that the 1966 contract was for permanent or lifetime employment. Correctly stating the law, it said, "contracts for permanent or lifetime employment with no consideration other than to perform are terminable at will." See Borland v. John F. Sass Printing Co., 95 Colo. 53, 32 P.2d 827. It is also clear, however, that where an employee has given additional consideration other than services incident to his employment, a contract for permanent employment or for life employment is valid and enforceable and not against public policy. Savarese v. Pyrene Manufacturing Co., 9 N.J. 595, 89 A.2d 237. See 53 Am.Jur.2d, Contracts § 33.
The trial court found "that the only possible consideration moving to the plaintiffs other than defendant's promise to perform * * * would be the reduction of ¼th percent for prompt payment," and that this was insufficient consideration to support a lifetime employment contract. The court thereby concluded that the contract imposed no obligation upon defendants; that it might be terminated at any time; and that it was so terminated.
The record, however, is replete with evidence that the Brewer interests both desired and requested Beeler's acceptance of a smaller percentage of gross receipts and the provisions of the new contract. In fact, the 1966 contract recited that it was "in consideration of the cancellation of the prior agreement between the parties." The detriment suffered by Beeler in his agreement to cancel the 1961 contract under which he was due 2¼% of gross receipts and to accept payments of only 2% of gross receipts was substantial and was sufficient consideration to support this contract. Western Federal Savings & Loan Ass'n v. National Homes Corp., 167 Colo. 93, 445 P.2d 892. See 17 C.J.S. Contracts § 74. We hold that the 1966 contract is valid and enforceable. It was error for the trial court to rule otherwise.

III.
Beeler further contends that the trial court erred in denying his objection to the Brewer interests' accounting statement for the year ending April 30, 1967. This accounting was adequately supported by a certified public accountant's "Report on Examination of Financial Statements." We cannot hold that the accounting submitted by the Brewer interests was insufficient, as a matter of law, for lack of competent supporting evidence. Bennett v. Gardner, 133 Colo. 33, 291 P.2d 705.
The judgment of the trial court is reversed and the case is remanded with directions that the amounts due Beeler under the 1966 contract be calculated and judgment be rendered thereon.
SILVERSTEIN, C. J., and DUFFORD, J., concur.