UNIWEST MORTGAGE CO.,
Plaintiff–Appellee,

v.

DADECOR CONDOMINIUMS, INC.,
and Brett Davis,
Defendants–Appellants.

No. 88–1478.

United States Court of Appeals,
Fifth Circuit.

July 20, 1989.

Rehearing Denied Aug. 23, 1989.

Michael F. Pezzulli and Charles J. Fortunato, Dallas, Tex., for defendants-appellants.

Robert P. Latham and Jonathan L. Snare, Dallas, Tex., for plaintiff-appellee.

Before GOLDBERG, REAVLEY and HIGGINBOTHAM, Circuit Judges.

GOLDBERG, Circuit Judge:

Appellants in this choice of law case would have us strap on mountaineering gear and scale the Pikes Peak of usury law—Colorado law. As amateur cartographers, we are certainly willing, and do, survey the undulations of the mountain, but the appellants have ill-equipped us with the necessary apparatus for a wintery ascent. Without crampons, ice axes, and other snowy habiliments, such a climb would be ill-advised. Using our transit, therefore, we caliper our way to an affirmance of the district court.

## I. FACTS AND PROCEDURAL BACKGROUND

Appellant-defendant Brett Davis ("Davis") is the president of appellant-defendant Dadecor Condominiums, Inc. ("Dadecor"). Dadecor borrowed $550,000 from appellee-plaintiff Uniwest Mortgage Co. ("Uniwest"). Davis executed a separate guaranty agreement which guarantees both the present loan and all future indebtedness of Dadecor to Uniwest unconnected with this loan. Uniwest is incorporated in Wyoming with its principal place of business in Denver, Colorado. Dadecor has

both its principal place of business and place of incorporation in Texas.

Uniwest sued Davis, as the guarantor, and Dadecor, as the obligor of the promissory note, after Dadecor defaulted on the loan. The district court's jurisdiction properly rests upon diversity of citizenship. 28 U.S.C. § 1332. Appellants claim that Texas law applies, and that the loan and guaranty are usurious under Texas law. Alternatively, appellants contend that the loan and guaranty are usurious even assuming Colorado law applies. The district court found that Colorado law applies and that the loan and guaranty are not usurious. We agree.

As reflected in a 90 day promissory note, Uniwest loaned Dadecor $550,000 at an annual interest rate of 10.5% (18.5% for overdue payments), calculated on the basis of a 360–day year. The loan was executed on December 24, 1986 and became due on March 25, 1987. Also on December 24, 1986, Davis executed, in his individual capacity, the separate guaranty agreement which guarantees the Dadecor–Uniwest December 24, 1986 promissory note and all future indebtedness unconnected with this promissory note. Additional terms of both the guaranty and the promissory note appear in a separate document, the "letter loan agreement." The clause that appellants claim is usurious appears in the letter loan agreement.

Paragraph three of the typewritten letter loan agreement, and a handwritten footnote, which is referenced in paragraph three, state:

> Guarantor [Davis] hereby agrees to use his best efforts to cause Troy & Nichols, within 120 days of the date hereof, to provide Lender [Uniwest] with a continuing commitment to purchase residential mortgage loans in amounts up to $2 million a month on such terms and conditions as offered to the best customers of Troy & Nichols.* [HANDWRITTEN FOOTNOTE: "Lender acknowledges that Guarantor will make no efforts in this regard unless and until Troy & Nichols is no longer owned by Stockton Sav-

ings Association or any other FSLIC insured institution and Guarantors (sic) obligation hereunder is undertaken solely as a broker and does not represent any action as a principal or owner of Troy & Nichols and that the decision to make any such commitment shall be an independent decision of the Management of Troy & Nichols."] If Guarantor is unable to cause Troy & Nichols to issue such a commitment, Guarantor shall pay Uniwest Mortgage Co. on demand a loan origination fee of $85,000 for providing this loan to Borrower. Such payment obligation is secured by a Security Agreement[1] of even date herewith.

Uniwest has never demanded the $85,000 mentioned in the letter loan agreement, payable by Davis in his capacity as guarantor, nor has Davis ever paid any of the $85,000.

The Dadecor–Uniwest promissory note includes the following language:

> This Note is secured by, and the holder of this Note is entitled to the benefits of, a Security Agreement (the "Security Agreement") and a Guaranty Agreement (the "Guaranty Agreement") of even date herewith given by Brett Davis for the benefit of Payee to secure this Note. Reference is made to the Security Agreement and Guaranty Agreement for a description of the property covered thereby and the rights, remedies and obligations of the holder hereof in respect thereto.

> \* \* \* \* \* \*

> This Note is to be governed by and construed according to the laws of the State of Colorado.

The guaranty agreement is a preprinted form which includes the following pertinent provision: "Indebtedness: All obligations of Borrower [Dadecor] to Bank [Uniwest] now or hereafter existing, howsoever created, arising or evidenced, whether direct or indirect, voluntary or involuntary, absolute or contingent, liquidated or unliquidated, and whether Borrower may be liable individually or jointly with others. \* \* \*

---

1. No security agreement was ever executed.

This guaranty shall be construed and governed by the laws of Colorado."

Uniwest, Dadecor and Davis, as the guarantor, executed a Modification and Extension Agreement on April 30, 1987, extending the maturity date of the loan to June 23, 1987. Dadecor thereafter defaulted. A principal of $390,775 was outstanding, Dadecor having paid $159,225 on the principal. Dadecor had also paid accrued interest in the amount of $5,812.78.

Uniwest filed this suit in the Northern District of Texas on September 22, 1987, against Dadecor and Davis. Dadecor and Davis counterclaimed asserting causes of action under Texas and Colorado usury law, and argued as an affirmative defense that the loan was illegal under both Texas and Colorado usury law. The parties filed opposing motions for summary judgment. The district court granted Uniwest's motion for summary judgment and denied Davis and Dadecor's motion for summary judgment, holding that the parties' contractual choice of Colorado law should be given effect, and that under Colorado law, the interest charged was not usurious. The district court awarded Uniwest the principal and interest as provided for in the promissory note ($390,775 plus accrued and unpaid interest thereon in the amount of $41,601.25 as of March 24, 1988, interest at the rate of $113.98/day from March 24, 1988 to June 7, 1988, the day of Judgment, and post-judgment interest at the rate of 10% until satisfaction of Judgment).

Both the promissory note and the guaranty agreement include reasonable attorneys' fees provisions. The district court awarded Uniwest reasonable attorneys' fees in the amount of $13,268.50.

Dadecor and Davis appeal to this Court.

## II. DISCUSSION

 The choice of law provision in the guaranty agreement [2] declares that Colorado law applies to disputes arising from the guaranty. The guaranty agreement includes a potentially usurious provision—the $85,000 "fee" due Uniwest if Davis failed to perform certain services. Because we sit in diversity, we must apply the law of Texas, the forum. The issue in this case, then, is whether the guaranty's express choice of Colorado law provision is enforceable under Texas law.

While we agree with the district court that the parties' choice of Colorado law applies according to Texas choice of law principles, we take a slightly different path in reaching our conclusion. We first decide whether the Uniform Commercial Code ("UCC") or the common law of contracts applies to this dispute. The district court relied upon a UCC case, *Woods–Tucker Leasing Corp. v. Hutcheson–Ingram*, 642 F.2d 744, 751–53 (5th Cir.1981) (UCC's reasonable relationship test), in reaching its conclusion. As we shall explain, *Woods–Tucker* is not the guiding case for this dispute because the common law, not the UCC, governs the guaranty agreement.

Since the district court issued its opinion, the Texas Supreme Court has announced a new standard for non-UCC cases. *Desantis v. Wackenhut Corp.*, 31 Tex.Sup.Ct.J. 616, —— S.W.2d —— (July 13, 1988).[3] Under *Desantis*, Texas' interest in Davis' guaranty agreement is not materially greater than Colorado's interest. Therefore, we apply the contractual provision which chooses Colorado law as the governing law to this dispute. The guaranty's clause concerning an additional fee of $85,-

---

**2.** Although Dadecor argues that the rate of interest provided for in the promissory note is usurious, this argument is without merit. The $85,000 fee is only contained in Davis' guaranty agreement; the UCC treats as distinct a negotiable instrument (the promissory note) and a guaranty. *See* discussion *infra.* Thus, the guaranty's potentially usurious clause has no relevance to whether Dadecor's promissory note contains usurious interest. The interest rates contained in the promissory note—10.5% for timely payments and 18.5% for overdue pay-

ments—are not usurious under either Texas or Colorado law.

**3.** The petition for rehearing in the *Desantis* case is still pending, nearly a year later. Four amicus curiae briefs concerning the petition for rehearing have been filed. While the Desantis opinion may receive some future modification from the Texas Supreme Court, for today, it is the law of Texas. As such, we will apply it to our case.

000 is not usurious because it is contingent and the payee (Uniwest) has not demanded payment. A contingent uncollected sum does not enter into one's calculation of usurious interest under Colorado law. Finally, the attorneys' fees, which the district court awarded pursuant to the terms of the contracts, are reasonable.

## A. THE UNIFORM COMMERCIAL CODE

We first confront whether the Uniform Commercial Code or common law choice of law principles apply to the guaranty agreement. Article 3 of the Texas Uniform Commercial Code covers commercial paper. We assume that the promissory note is a negotiable instrument. Tex.Bus. & Com. Code § 3.104.[4]

■ For a guaranty to fall within the scope of UCC § 3.416 (guarantors), the guarantor must "sign" the "instrument" in the capacity of a guarantor. The guaranty agreement in this case is a separate agreement; it is not a part of the promissory note, the negotiable instrument. In addition, the guaranty agreement is general covering all current or potential future indebtedness between Dadecor and Uniwest. The guaranty is not limited to the scope of the promissory note.

A separate guaranty agreement does not fall within the ambit of the Uniform Commercial Code. *See Crown Life Ins. Co. v. LaBonte*, 111 Wis.2d 26, 330 N.W.2d 201, 208–09 (1983); *Simpson v. Milne*, 677 P.2d 365, 369 (Colo.App.1983); *University Bank & Trust Co. v. Dunton*, 655 F.2d 23 (1st Cir.1981); *Fewox v. Tallahassee Bank & Trust Co.*, 249 So.2d 55, 57 (Fla.App. 1st Dist.1971). "UCC § 3–416 is applicable only to guaranties written on commercial paper that comes within the scope of Article 3." Anderson, Uniform Comm.Code § 3–416:4 p. 373 (3rd. ed.).

Although the terms of the promissory note refer to the guaranty, a descriptive "reference" is not the equivalent of substantive incorporation. Within the negotiable instrument there is no incorporation by reference of the guaranty. Thus the guarantor's "signature" does not appear upon the "instrument." The guarantor's signature is separate. *See* § 3.401 (signature) & § 3.102(a)(5) ("instrument" means a negotiable instrument).

In *Crown Life v. LaBonte*, the Wisconsin Supreme Court analyzed, in a fashion typical of most courts, the separateness issue. "[The guaranty] was executed by LaBonte in his individual capacity in a contract that was separate and apart from the note.... [A] guarantor who executes a guaranty separately from the note, although in many instances as part of the same transaction, is not a 'party to the instrument' within ... the UCC.... Sec. [3.416] clearly requires that the guaranty must be written on the instrument in order to bring it within the UCC. A guarantor who simply guarantees an instrument in a separate contract has not engaged in a transaction within the UCC...." *Crown Life Ins. Co. v. LaBonte*, 330 N.W.2d at 208–09.

The UCC rule is apparently intended to promote the free negotiability of the promissory note. If the guaranty is included within the four corners of the negotiable instrument itself, then whoever receives the negotiable instrument in the stream of commerce immediately becomes aware of a guarantor's existence.

In this case, although Uniwest and Davis executed the guaranty when they executed (Davis in his capacity as the president of Dadecor) the promissory note, the guaranty is not incorporated within the body of the negotiable instrument and reaches beyond the scope of the underlying promissory note. The pagination of the promissory note does not continue to the printed form of the guaranty. Thus we conclude that the guaranty here is a separate agreement

---

**4.** For a writing to be a negotiable instrument, it must "(1) be signed by the maker or drawer; and (2) contain an unconditional promise or order to pay a sum certain in money and no other promise ...; and (3) be payable on demand or at a definite time; and (4) be payable to order or to bearer." UCC § 3.104(a). A "'note' is a promise other than a certificate of deposit." UCC § 3.104(b)(4).

which does not fall within the UCC. We, therefore apply common law choice of law principles not UCC principles to the guaranty. *See* UCC § 1.103.

## B. TEXAS CONTRACTUAL COMMON LAW CHOICE OF LAW PRINCIPLES

In *Desantis v. Wackenhut Corp.*, 31 Tex.Sup.Ct.J. 616 (July 13, 1988), the Texas Supreme Court announced a new rule of law in common law contractual choice of law cases. *Desantis* specifically incorporates section 187 of the Restatement (Second) of Conflict of Laws. Section 187 reads in pertinent part:

> the law of the state chosen by the parties to govern their contractual rights and duties will be applied ... unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of section 188 [of the Second Restatement of Conflict of Law], would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Desantis*, 31 Tex.Sup.Ct.J. at 618 & n. 2 (quoting Restatement (Second) of Conflict of Laws section 187(2)(a) & (b) (1971)).

Opposing policies affect how a court should construe § 187. On the one hand, "[c]ontract law seeks to protect the justified expectations of the parties and to provide certainty as to their rights under the contract. In multi-state transactions, these objectives are best met by allowing the parties to agree that the law of a particular jurisdiction shall control their contractual relationships. Section 187 of the *Restatement [Second] of Conflict of Laws* promotes these objectives of certainty and predictability by making such choice of law clauses generally enforceable." *Desantis*, 31 Tex.Sup.Ct.J. at 618. But there are limits to these policies of certainty and predictability. Thus § 187 compels a court to abandon

the application of the law of the contractually chosen state when the *forum state's interest in the contract is materially greater* than the chosen state's interest in the contract *and* the application of the chosen state's law would violate a fundamental policy of the forum state. These limits upon the parties' ability to designate by contract the applicable law for any contract dispute protect a person who has little bargaining power, while still promoting predictability and certainty of contract within justifiable limits.

The district court correctly answered the first inquiry mandated in § 187(a): whether the chosen state bears no substantial relationship to the transaction. Colorado certainly bears a reasonable relationship because Uniwest's principal place of business in in Colorado and Dadecor made the loan payments in Colorado.

The second inquiry mandated in section 187(1)(b) is more difficult and involves two standards: first, whether Texas' interest in the contract is materially greater than Colorado's interest in the contract, and if so, only then whether application of Colorado law to the contract would be contrary to a fundamental policy of Texas. If the answer to both of these questions is "Texas," then predictability and certainty of contract must be set aside and Texas law applied. However, if either of these inquiries yields Colorado as an answer, then the contractual choice of Colorado law must be respected.

To answer whether Texas' interest in the contract is materially greater than Colorado's, we examine the largely undisputed facts in light of the factors set forth in Restatement [Second] of Conflict of laws § 188(2). Section 188(2) provides: "the contacts to be taken into account in applying the principles of § 6 [of the Restatement (Second) of Conflict of laws] to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue."

In this case the lender, Uniwest, has its principal place of business in Colorado. The borrower, Dadecor, is a Texas corporation, with its principal place of business in Texas. Davis, the guarantor, is a resident citizen of Texas. The performance called for in the loan contract is payment of money. All payments were made in Colorado. Because Dadecor made all payments in Colorado, the place of performance is Colorado. It appears that the contract was negotiated and executed through the use of the mail, and possibly some negotiation over the telephone, with the borrower conceivably venturing to Colorado to close the deal, although this last point is unclear. Nothing from the record indicates that the lender, Uniwest, ever went to Texas. Thus, we will not construe the location of the negotiation to point either toward Texas or Colorado; on these facts, we will disregard the place of negotiation and the place of contracting factors.

Texas does have some interest in the loan and guaranty of the loan because the borrower and the guarantor are from Texas. However, Colorado also has an interest in the deal. The lender is from Colorado, plus, significantly, performance occurred in Colorado. From these facts, we conclude as a matter of law that Texas' interest in the contract is not *materially* greater than Colorado's interest in the contract. *Desantis,* — S.W.2d at —; *see Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 421 (Tex.1984) (most significant relationship test, section 6 of the Second Restatement of Conflicts of Laws); *Atlantic Mutual Ins. Co. v. Truck Ins. Exchange,* 797 F.2d 1288, 1291 (5th Cir.1986); *Smith v. Western & Southern Life Ins. Co.,* 87 F.2d 839, 841 (5th Cir.1937). Accordingly, we must refrain from upsetting the expectations of the parties; we, therefore, we apply the

contractual choice of Colorado law to this case.

Because of our conclusion, we need not decide whether the contract in this case violates a fundamental policy of the state of Texas under section 187 as adopted in *Desantis.*

## C. USURY IN COLORADO

■ The guaranty agreement permits Uniwest to demand $85,000, in addition to the stated rate of interest (10.5% if timely and 18.5% if overdue) from Davis, in his capacity as the guarantor, on the underlying money borrowed, if Davis failed to secure a commitment for Uniwest to have the right to purchase up to $2 million in loans every month. Uniwest has never demanded the $85,000 from Davis.

We now consider whether, under Colorado law, the potential of an $85,000 payment is used in calculating the rate of interest under the commercial usury statute. If the $85,000 is used in the calculation of usurious interest, the $85,000 spread over 120 days (the amount of time that Davis had to perform the task), adjusted to an annual rate, amounts to 46.4% in additional interest. Adding this to the stated rates of interest in the promissory note boosts the rate of interest to 56.9% for timely payments and 64.9% for overdue payments. Both of these rates of interest exceed Colorado's ceiling of 45% for collectable interest in commercial loans.

Colorado distinguishes in its usury laws between commercial loans and consumer loans. Consumer loans are tightly regulated with significant protections statutorily mandated for the consumer. *See generally,* Siegman & Linquanti, *The Convertible, Participating Mortgage: Planning Opportunities and Legal Pitfalls in Structuring the Transaction,* 54 U. Colo. L. Rev. 295 (1983). Commercial loans, like the one involved in this case, are not subjected to tight regulation. The Colorado legislature places the control of illegitimate behavior for this context in the market.[5]

---

**5.** The official comment to the Colorado Uniform Consumer Credit Code, Colo.Rev.Stat. § 5–3–605 (1973), states: "Placing arbitrary ceilings on the amount of interest which can be charged in larger business transactions may prevent persons engaged in high risk business ventures from obtaining needed capital loans. It is impossible to measure how much is too much

Thus, the legislative ceiling for usury in the commercial context is intentionally high (45%) and difficult to surpass because contingent interest is not considered.

The usury statute, 5–12–103, for commercial loans provides:

*Greater rate may be stipulated.* (1) The parties to any bond, bill, promissory note, or other instrument of writing may stipulate therein for the payment of a greater or higher rate of interest than eight percent per annum, but not exceeding forty-five percent per annum, and any such stipulation may be enforced in any court of competent jurisdiction in the state, except as otherwise provided in articles 1 to 6 of this title. The rate of interest *shall be deemed* to be excessive of the limit under this section *only if it could have been determined at the time of the stipulation by mathematical computation that such rate would exceed an annual rate of forty-five* percent when the rate of interest was calculated on the unpaid balances of the debt on the assumption that the debt is to be paid according to its terms and will not be paid before the end of the agreed term. (2) The term "interest" as used in this section means the sum of all charges payable directly or indirectly by a debtor and imposed directly or indirectly by a lender as an incident to or as a condition of the extension of credit to the debtor, whether paid or payable by the debtor, the lender, or any other person on behalf of the debtor to the lender or to a third party.

Colo. Rev. Stat. § 5–12–103(1) & (2) (1988) (emphasis added, subsections (3) & (4) omitted).

In Colorado, interest above the 45% mark is not collectable because it is usurious. But any amount of interest up to and including 45% is permitted under Colorado law, and a lender may collect the 45% interest even when the contract is for over 45%. *Brown v. Fenner,* 757 P.2d 184, 184 (Colo. App.1988) (where parties agreed to 50% interest, the court permitted the lender to collect 45% interest, and did not declare the contract void). Usurious interest does not make the contract void.

In determining whether the interest is usurious, contingent interest is not considered in the calculation. *Beeler v. H & R Block of Colorado, Inc.,* 487 P.2d 569, 573 (Colo.App.1971) (definite agreement to pay needed for usury). This proposition flows from the wording of the commercial loan usury statute which states that "the rate of interest shall be deemed to be excessive ... only if it could have been determined at the time of [contract] by *mathematical computation* that such rate *would exceed* ... forty-five percent...." Colo.Rev.Stat. § 5–12–103(1). Mathematical certainty is the crucial idea. If the statute had said *"could* exceed" by "mathematical computation" then a contingent amount of interest would have to be considered when making the calculation. Thus, an uncollected contingent sum cannot be included in a calculation to determine whether a contractual rate of interest is usurious. *Beeler v. H & R Block,* 487 P.2d at 572–73; Siegman & Linquanti, *The Convertible, Participatory Mortgage: Planning Opportunities and Legal Pitfalls in Structuring the Transaction,* 54 U.Colo.L.Rev. 295, 333 (1983) (statute only declares as usurious noncontingent interest or contingent interest that inherently must produce a result in excess of the 45% ceiling).

In this case, Uniwest has not collected the $85,000 from Davis. Under the guaranty agreement's terms, Uniwest can only demand the $85,000 from Davis *if* Davis did not acquire the necessary mortgages from Troy & Nichols. This is a contingency. The added fee is contingent upon Davis not performing a task. One might think that the $85,000 reflects the value of Davis' performance. But the record offers no support for this idea, even assuming it is what the parties intended. Because neither the contract nor anything else in the record reflects the actual value of Davis' completed performance, this unknown value is not calculable at the time of contract-

interest with respect to large business transactions." Colorado, apparently, assumes that

large commercial business transactions involve both sophisticated lenders and borrowers.

ing to a mathematical certainty. Thus, because Davis could have performed, and the value of his completed performance is uncertain, the $85,000 fee must be viewed as a contingent term. This contingency means that the $85,000 cannot be used in the mathematical calculation of what interest is involved in this case.

Accordingly, we will not consider the $85,000, under Colorado law, when calculating the applicable rate of interest in this case. The stated rates of interest—10.5% for timely payments and 18.5% for overdue payments—are not usurious. We therefore agree with the district court's judgment that the contracts are not usurious.[6]

### III. CONCLUSION

Aspiring to survey the applicable terrain with topographical precision, we fully agree with the district court's judgment. In the course of our survey, we have discerned that (1) the guaranty involved in this case is governed not by the Uniform Commercial Code but by common law choice of law principles; (2) *Desantis v. Wackenhut*, 31 Tex.Sup.Ct.J. 616 (1988) requires us to conclude that Colorado law must apply because Texas' interest in these contracts is not materially greater than Colorado's—the contractually chosen state of applicable law; and (3) under Colorado's usury law for commercial loans, the $85,000 fee is not usurious because it is contingent. We, therefore, AFFIRM the district court's judgment.

---

**6.** The district court awarded Uniwest $13,268.50 in attorneys' fees pursuant to the terms of the promissory note and guaranty. Colorado law permits a court to award reasonable attorneys' fees when the parties contract for attorneys' fees. *See Martinez v. Continental Enterprises,* 730 P.2d 308, 319 (Colo.1986). We have scrutinized the record carefully, and determine that no issue of material fact exists concerning the entitlement or the amount of the fee awarded. We agree with the district court's judgment on the issue of attorneys' fees.