**Martin R. SNOEY, Plaintiff,**

v.

**ADVANCED FORMING TECHNOLOGY, INC., a Delaware corporation; Precision Castparts Corp., an Oregon corporation; John Popken; William C. McCormick; and John Does, whose real identities are not presently known, Defendants.**

**Civ. A. No. 93–K–94.**

United States District Court,
D. Colorado.

Feb. 15, 1994.

Gregory A. Eurich, David D. Powell, Jr., Holland and Hart, Denver, CO, for plaintiff.

Charles W. Newcom, Elizabeth I. Kiovsky, Sherman and Howard, Denver, CO, for defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

KANE, Senior District Judge.

This diversity action arises out of Plaintiff Martin R. Snoey's termination from his position as president of Defendant Advanced Forming Technology, Inc. (AFT), a wholly owned subsidiary of Defendant Precision Castparts Corporation (PCC). Snoey alleges that AFT, PCC and two corporate officers, William C. McCormick and John Popken, are liable to him for (1) violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621–634, (2) promissory estoppel, (3) negligent misrepresentation, (4) breach of contract, (5) intentional interference with contractual relations, and (6) wrongful termination in violation of public policy. Defendants move for summary judgment on all of these claims. Snoey has confessed the motion as to McCormick's liability on the fifth claim and as to all Defendants on the sixth claim. I grant the motion except as to the fourth claim for breach of contract and the fifth claim against Popken for intentional interference with contractual relations.

### I. *Facts.*

In June of 1991, Snoey, a business executive with extensive experience in manufacturing, began to investigate job opportunities in the Pacific Northwest. Snoey's mother-in-law had recently passed away, and Snoey and his family hoped to relocate closer to his wife's relatives. Snoey contacted William McCormick, president of PCC, a manufacturing concern operating in Portland, Oregon. Although PCC then had no openings, McCormick expressed a keen interest in hiring Snoey. After several meetings with McCor-mick and other executives of PCC, in which both Snoey and McCormick seemed to recognize that Snoey would be well qualified for a position with the company, Snoey wrote to McCormick, summarizing his thoughts about their recent discussions. In a letter dated October 16, 1991, Snoey noted that he viewed his relationship with PCC "in terms of the next 20 years," and that he had received inquiries from other companies but that he and his wife were willing to delay their decision for several months since they preferred to locate with PCC in the Pacific Northwest. In a phone call in response to this letter, McCormick agreed with Snoey's summary and indicated that he preferred to hire people with long-term potential with the company. Snoey also took an aptitude test administered by the company, which indicated he was a good prospect for employment.

Several months later, McCormick advised Snoey of an opening at AFT, PCC's subsidiary located in Longmont, Colorado. Snoey travelled to Longmont in late 1991 to interview with AFT's management team for the position of president. The team recommended him over another applicant. On December 19, 1991, he was offered the job. In a letter dated January 27, 1992, McCormick confirmed the negotiated terms and conditions of Snoey's employment. Snoey began work on February 1, 1992.

On March 31, 1992, McCormick flew to Colorado, met with Snoey, and terminated his employment with AFT. While McCormick expressed satisfaction with many aspects of Snoey's performance, he told Snoey that he was being terminated because he was not a "good fit" for the position, in that he had poor relations with the other members of AFT's management team. Snoey was replaced by Robert Reed, a thirty-five year old manager at AFT. According to Snoey, then forty-nine, his termination was at least in part instigated by John Popken, a founder and former president of AFT who was a vice-president during Snoey's tenure.

### II. *Issues.*

#### A. *Age Discrimination Claim.*

■ Defendants first argue that they are entitled to summary judgment on Snoey's

first claim under the ADEA because Snoey has failed to bring forth sufficient evidence indicating a genuine issue of material fact that he was fired because of his age. Snoey responds that statements by John Popken in relation to the promotion and firing of other employees create a genuine issue of material fact that age played a role in his termination. Because these statements referred to other employees, not Snoey, and were not made by the person who actually had the authority to fire him, they are insufficient to create a genuine issue of material fact requiring trial on Snoey's ADEA claim.

In an ADEA case where there is no direct evidence of age discrimination, the familiar burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981), applies. *See Cone v. Longmont United Hosp. Assoc.*, 14 F.3d 526, 529 (10th Cir.1994). First, the plaintiff must make out a prima facie case by showing that (1) he was within the protected age group, (2) he was doing satisfactory work, (3) he was discharged, and (4) his position was filled by a younger individual. *Id.* at 529. Here, Snoey has met this burden. He was forty-nine years old when fired by AFT, had been doing satisfactory work, was discharged and was replaced by Robert Reed, who was thirty-five at the time.

Once the plaintiff has established a prima facie case of age discrimination, the burden then shifts to the defendant "to present a legitimate nondiscriminatory reason for its action." *Id.* at 529. Defendants have done so in this case through the deposition excerpts of McCormick and members of AFT's management team, which indicate that Snoey was terminated because he was unable to work well with the team and therefore did not prove to be a "good fit" for his position.

By producing evidence of a nondiscriminatory reason for the firing, the burden once again shifts back to Snoey to "show that age was the determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext." *Id.* Snoey offers evidence that John Popken, one of AFT's founders, its former president and its executive vice president during Snoey's tenure, commented that AFT's former human resources manager was fired because she was "too old and a little different and really didn't fit in." In addition, Snoey points to Popken's reviews of two younger managers in which Popken praised one manager's "youthful energy" and noted the "opportunities for bright young minds" like the other. Snoey also relies on the list of priorities which Popken prepared at Snoey's request, which included the "development of our young superstars." Finally, Snoey notes that the age profile of AFT's management team after his termination ranged from twenty-six to thirty-nine.

Although Snoey refers to Popken as the "decision-maker/instigator" of his termination, (Pl.'s Br.Opp.Defs.' Mot.Summ.J.), the undisputed facts show that McCormick, not Popken, made the decision to fire Snoey. Although Popken may have had his own agenda to get rid of Snoey, Snoey has failed to identify any evidence that McCormick's decision was motivated by age. "[A]ge-related comments by non-decisionmakers are not material in showing the [employer's] action was based on age discrimination" and was not mere pretext. *Cone,* at 531; *see also Aungst v. Westinghouse Elec. Corp.,* 937 F.2d 1216, 1221 (7th Cir.1991) ("[s]tatements made by inferior employees are not probative of an intent to discriminate," even though decisionmaker consulted with them in making decision). Moreover, even if Popken's statements were relevant, there must be some connection between the discriminatory comments and the plaintiff's termination. *Cone,* at 531. Stray remarks and isolated comments dealing with other employees and unrelated to the challenged action "are insufficient to show discriminatory animus in termination decisions." *Id.* at 531.

For these reasons, despite evidence that Popken may have had a discriminatory mindset, Snoey has failed to meet his summary judgment burden to highlight evidence showing that McCormick's explanation for his firing was pretext. Likewise, while evidence of the youth of AFT's management team bol-

sters his prima facie case of discrimination, it is not probative of discriminatory animus. Therefore, Defendants' motion for summary judgment on Snoey's first claim under the ADEA is granted.

## B. *Promissory Estoppel Claim.*

Defendants next argue that Snoey's second claim for promissory estoppel is insufficient as a matter of law because Snoey cannot show that enforceable promises regarding the duration of his employment were made or that his reliance on those alleged promises was reasonable. First, they assert that the statements upon which Snoey relies to support his promissory estoppel claim were too indefinite because they did not indicate that Snoey was ever promised a specific term of employment. Second, assuming enforceable promises were made, Defendants contend that Snoey could not have reasonably relied on those promises because he later signed forms in which he acknowledged that he had no employment contract with AFT. Snoey responds that the corporate officers' promises of long-term employment were specific enough to support his claim of promissory estoppel and that the acknowledgements he later signed were of no effect.

 Under Colorado law, an employee is rebuttably presumed to have been hired on an at-will basis absent an express contract for a definite period of time. *Burrill v. GTE Gov't Sys. Corp.,* 804 F.Supp. 1356, 1358 (D.Colo.1992). An at-will employee may be terminated at any time without notice or cause. *Id.* Such a termination will not give rise to a cause of action. *Id.*

██ Here, the undisputed evidence shows that Snoey did not enter into a written contract with AFT specifying a definite period of employment. The only written agreement between the parties is a letter, dated January 27, 1992, from McCormick to Snoey outlining the terms of Snoey's employment and apparently negotiated by Snoey and PCC's vice president for human resources, Corwin Matthews. The letter covers such areas as salary, bonuses, relocation arrangements, and other benefits. No duration of employment is specified in the letter and it is silent as to either party's obligations upon termination of the employment relationship.

Snoey points instead to verbal representations made by company officials indicating that he had a long-term employment contract. Snoey notes a number of examples in which, during his negotiations with McCormick leading to his hiring at AFT, McCormick repeatedly indicated his long-term prospects with both AFT and PCC. When Snoey noted that he was willing to take a cut in pay to work for PCC, McCormick indicated that he would easily make up for this loss in future years with the company. McCormick further indicated his agreement with Snoey's statements in an October 16, 1991 letter noting his hopes for a long-term relationship with PCC and the fact he was foregoing other employment opportunities to pursue a position with the company. When offered the position at AFT, McCormick indicated that AFT needed a president who would stabilize the company over the next three to five years. Finally, during negotiations over the terms of his employment with Matthews, Snoey requested a severance pay provision be included in the January 27 letter, but Matthews denied the request, representing that the company would "take care" of him. These representations, Snoey argues, constitute enforceable promises of long-term employment. I disagree.

First, Snoey relies on *Chidester v. Eastern Gas & Fuel Assocs.,* 859 P.2d 222 (Colo.App. 1992), to support his promissory estoppel claim. In *Chidester,* the plaintiffs were offered "a minimum of five years to make the division they were hired to run profitable." *Id.* at 224. Unlike *Chidester,* Snoey has not pointed to any statements indicating that he was hired for a specific term or on a permanent basis. The statements upon which he relies are too ambiguous and indefinite to be considered offers of employment for a specific term. *See Meacham v. General Elec. Corp.,* No. 86–1128, slip op. at 9 (10th Cir. Feb. 23, 1988) (unpublished disposition) ("A hope, or expectation, or anticipation that [employment] will be long-term, or is an 'opportunity' for four or five years" is not enough to establish a contract for a fixed

term of employment); *Allen v. Dayco Prods., Inc.,* 758 F.Supp. 630, 632 (D.Colo.1990).

Second, while the presumption of at-will employment in absence of an express contract for a definite period is rebuttable, *Burrill,* 804 F.Supp. at 1358, this is most often done through reliance on additional language in an employee handbook which could be interpreted to alter the at-will relationship. *See id.* Snoey, however, does not rely on AFT's employee manual to support his promissory estoppel claim, as the manual apparently provides for an at-will relationship. Instead, he asserts that "special consideration" required Defendants to have employed him for a reasonable time.

■ In *Pittman v. Larson Distributing Co.,* 724 P.2d 1379, 1383 (Colo.App.1986), the court held that when an employment agreement for an indefinite term is supported by "special consideration" in the form of an additional benefit to the employer, the employer may not terminate the employee without cause until the passage of reasonable time. *See also Allen v. Dayco Prods., Inc.,* 758 F.Supp. at 633. *See generally* 30 C.J.S. *Employer–Employee* § 43 (1992); Robert A. Brazener, Annotation, *Validity and Duration of Contract Purporting to be for Permanent Employment,* 60 A.L.R.3d 226 (1974). "Special consideration includes, among other circumstances, the acceptance by the employee of lower pay, and the employer's acquisition of the expertise and customer contacts of an experienced salesman." *Pittman,* 724 P.2d at 1383. Generally, "the detriment sustained by the employee in preparing himself to accept the offered employment not mutually understood as being part of the consideration, such as giving up a business or position, or relocation, is insufficient to show that the parties intended more than a general indefinite hiring or hiring at will." 30 C.J.S. *Employer–Employee* § 27 at 55 (footnotes omitted); *see also Schur v. Storage Technology Corp.,* No. 92CA1825, —— P.2d ——, ——, 1994 WL 24128, at *4 (Colo.App. Jan. 27, 1994).

Whether circumstances represent special consideration so that the employment relationship was not terminable at will is normally a question for the jury. *Pittman,* 724 P.2d at 1383. In this case, however, there is insufficient evidence of special consideration to raise a triable issue. Snoey argues that he gave special consideration to Defendants because he was willing to accept lower pay to work for PCC and that he was relinquishing other employment prospects to pursue employment with the company. Yet Snoey's decision to relocate and to accept lower pay was, in the first instance, induced by his desire to move closer to the Pacific Coast to be nearer to his wife's family, which he expressed to McCormick during his initial contacts about a position. More important, at the time he was hired at AFT, Snoey had been unemployed for almost one year. Given these circumstances, I conclude that Snoey has not come forward with sufficient evidence of "special consideration" to submit the issue to the jury and that, as a matter of law, his employment with AFT was terminable at will. *Compare Beeler v. H & R Block of Colorado, Inc.,* 487 P.2d 569 (Colo.App.1971) (not selected for official publication) (employee's voluntary acceptance of reduction in the percentage of gross receipts under revised agreement requested by employer sufficient consideration to support a permanent contract for employment).

■ Assuming for the purposes of argument that the foregoing circumstances would justify an exception to the at-will rule, I also agree with Defendants that Snoey did not reasonably rely on their alleged representations. Defendants position is consistent with the terms of the January 27 letter, which outlined the specific conditions of his employment but expressed no fixed term of employment and no provisions for severance pay, despite Snoey's request. Furthermore, Snoey does not dispute that he signed an acknowledgement on February 10, 1992, shortly after he began work, which stated: "I have the right to end my work relationship with the Company for any reason, with or without advance notice. The Company has the same right."

While Snoey makes much of the fact that other statements in this and another acknowledgement he signed on the same day make little sense and that he never received copies of the employee manuals referenced in

the acknowledgments; the above quoted-language is independent of and unrelated to the manuals. Snoey also contends that the acknowledgement is not binding since the representations upon which he relies were made before he signed it. Nevertheless, despite the fact that the January 27 letter contained no severance provision or express term of employment and company forms given to him clearly indicated an at-will relationship, Snoey never questioned these events and continued to work for AFT. His reliance on Defendants' earlier representations in the face of these clear indications that his employment was terminable at will cannot be considered reasonable. For these reasons, I grant the motion for summary judgment as to Snoey's second claim for promissory estoppel.

## C. Negligent Misrepresentation Claim.

■ Defendants' third argument is that Snoey fails to state a claim for negligent misrepresentation because the allegedly improper statements upon which he relied were not made for his use in a business transaction with a third party. In other words, according to Defendants Snoey may bring such a claim only if he was provided with misinformation in connection with a business transaction with someone other than Defendants. Snoey responds that no such third-party transaction is required.

■ Both Snoey and Defendants agree that Colorado adopts the Restatement (Second) of Torts § 552, which defines liability for negligent misrepresentation. Under that provision,

(1) One who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3) [irrelevant], the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Restatement (Second) of Torts § 552(1), (2) (1977).

Although the Restatement and Colorado law is unclear whether a claim for negligent misrepresentation may arise only in relation to a transaction with a third party, in *Colorado National Bank of Denver v. Adventura Associates*, 757 F.Supp. 1167, 1171 (D.Colo. 1991), the court concluded that there was a substantial basis for such a requirement. For the reasons stated in *Colorado National Bank*, which are consistent with case law from other jurisdictions and Colorado's pattern jury instructions, I agree that a third-party transaction is necessary to state a claim for negligent misrepresentation. *See id.* at 1172–73. Because Snoey alleges that negligent misrepresentation only in connection with his relations with Defendants and not a third party, his third claim must be dismissed.

## D. Breach of Contract Claim.

■ Defendants' fourth argument is that Snoey's claim for breach of contract should be dismissed. In this claim, Snoey alleges that in the January 27 letter, PCC promised "to gross up [his] income for the 1992 tax year to hold [him] harmless for any tax effect incurred with relocation expenses in the move to Longmont." (McCormick Dep.Ex. 12.) According to Snoey, the agreement to "gross up" his income was enforceable upon his reporting to work, "irrespective of any alleged ground to terminate his employment." (First Am.Compl. ¶ 42). Defendants argue, however, that there is no evidence that Snoey ever incurred any of the relocation expenses which would require PCC to pay such compensation. I disagree.

 

Snoey alleges in his complaint that he accepted his employment "on the terms of the [January 27] offer letter and ... began such employment on February 1, 1992. Further, PCC paid Snoey $10,000 pursuant to the offer letter for miscellaneous relocation expense of moving to Colorado." (First Am. Compl. ¶ 24.) In his affidavit in opposition to the motion for summary judgment, Snoey states:

"My letter of employment also includes a promise that PCC will "gross up" my income for 1992 to hold me harmless from any tax effect as a result of my receipt of income for moving expenses. Although I received certain reimbursement for temporary moving expense which had an adverse tax impact on me, PCC has never grossed up my income to offset this income tax effect. I have also suffered damages on the ultimate sale of my house by reason of the failure of PCC to meet its obligations under this provision of my letter of employment."

(Snoey Affid., ¶ 15.) Defendants' only response to Snoey's complaint and affidavit is to deny that Snoey incurred any relocation expenses, without reference to any evidence to support their position. Therefore, Snoey's breach of contract claim based on the "gross up" provision of the January 27 letter and the sale of his house is not amenable to summary judgment.

E. *Intentional Interference with Contract Claim.*

Defendants' final argument is that Snoey has failed to present sufficient evidence to support his claim against McCormick and Popken for intentional interference with contract. Defendants maintain that Snoey has not come forward with evidence that either McCormick or Popken "were not acting for a bona fide organizational purpose in deciding to terminate" him. (Defs.' Mot. Summ.J. at 24). At oral argument, counsel for Snoey conceded the motion as to McCormick. Thus, I consider the motion for summary judgment only with respect to Popken.

Although I have earlier held that Snoey had no employment contract for a definite term, even a contract terminable at will is entitled to some protection from tortious interference. *Zappa v. Seiver,* 706 P.2d 440, 442 (Colo.App.1985). Nevertheless, to prove such a claim against Popken, a corporate officer, Snoey must show that Popken was motivated "solely by a desire to induce the corporation to breach its contract" with Snoey for his own personal interests and not the interests of the corporation. *Id.* Snoey has presented at least some evidence that Popken was motivated by age bias and by his desire to place his "own man" in the position of president of AFT, an effort that McCormick thwarted by limiting interviewees for the job. Thus, Popken's motivation is a genuine issue of material fact, precluding summary judgment on this claim. *See id.*

### III. *Conclusion.*

IT IS ORDERED THAT Defendants' motion for summary judgment is GRANTED as to Snoey's first claim under the ADEA, his second claim for promissory estoppel, his third claim for negligent misrepresentation, his fifth claim for intentional interference with contractual relations against William C. McCormick and his sixth claim for wrongful discharge in violation of public policy. It is DENIED as to his fourth claim for breach of contract and his fifth claim for intentional interference with contractual relations against John Popken.