Lee D. SCHUR, Plaintiff–Appellant,

v.

STORAGE TECHNOLOGY CORPO-RATION, a Colorado corpora-tion, Defendant–Appellee.

No. 92CA1825.

Colorado Court of Appeals, Div. I.

Jan. 27, 1994.

Rehearing Denied March 3, 1994.

Certiorari Denied Aug. 8, 1994.

**52**

Larry F. Hobbs, P.C., Larry F. Hobbs, Fattor & Kittle, P.C., Rita Byrnes Kittle, Denver, for plaintiff-appellant.

Dwight C. Seeley, Louisville, Walters & Joyce, P.C., Craig D. Joyce, Denver, for defendant-appellee.

Opinion by Judge CRISWELL.

Plaintiff, Lee D. Schur, instituted this action against defendant, Storage Technology Corporation, to obtain damages for his employment termination by defendant. His complaint relied upon two principal legal theories, breach of his employment contract and fraudulent nondisclosure (both under the common law and under §§ 8–2–104 and 8–2–107, C.R.S. (1986 Repl.Vol. 3B)). The trial court summarily dismissed plaintiff's statutory claim on a pre-trial basis. Later, at the end of plaintiff's evidence, the court entered judgment dismissing plaintiff's complaint in its entirety. He appeals from that judgment, and we affirm.

In the spring of 1990, when he was a resident of California and unemployed, plaintiff was interviewed by representatives of defendant for possible employment in Colorado. During the course of these conversations, plaintiff expressed his wish for stable employment and inquired concerning defendant's financial status. He was told that, while defendant had recently been in reorganization under the bankruptcy laws and had had a severe cut-back in the number of its employees, such layoffs were now "behind it."

Defendant was at this time intending to institute a new program, and plaintiff possessed expertise of a type needed for that program. Thus, after several of its representatives spoke with him, defendant sent plaintiff a letter offering employment. This letter offered him a professional position in its Program Management Department at a salary of $7,500 per month; it offered to allow plaintiff to participate in its "Management Bonuses Program" and in its employee stock option program; and it offered to reimburse his relocation costs, including closing costs on the purchase of a new home, up to a maximum of $4,000. This letter, however, did not establish any definite term for the length of plaintiff's employment.

Plaintiff accepted this offer of employment, and at the time he reported to work, he was provided with an employee's manual or handbook that covered a number of subjects. On its face page, in italicized letters, there was a disclaimer that read, in part:

> [T]he information contained in this handbook does not constitute an express or implied contract of employment. StorageTek specifically reserves the right to react to changing circumstances or events as it determines necessary in its business judgment.

In addition, under the subject, "Employment–At–Will," this handbook contained the following provision:

> StorageTek ascribes to a policy of fair treatment of its employees. However, neither the company's policies nor this employee handbook should be construed by any employee as an express or implied contract guaranteeing the rights of any employee permanently. StorageTek reserves the right, without notice to employees, to unilaterally modify, add to, suspend, interpret or cancel any of the provisions of this employee handbook and its published or unpublished corporate policies and procedures if it is in the best interests of the company and its workforce as a whole. Accordingly, unless the employee has an executed written contract with StorageTek, employment with the company is terminable at will of either the employee or StorageTek, at any time, without notice, cause or any specific disciplinary procedures.

After plaintiff had been employed by defendant for approximately six months, defendant decided to discontinue the program for which plaintiff was hired. Hence, he was laid off, effective December 28, 1990.

Based upon the foregoing, plaintiff instituted suit against defendant asserting that (1) his layoff breached a contract for permanent employment that was in existence between the parties, (2) defendant's failure to disclose that layoffs were not "an uncommon situation" constituted fraudulent nondisclosure under the common law, and (3) defendant's conduct violated § 8–2–104, which prohibits "bringing workmen ... into this state to work, through or by means of false or deceptive representations."

The trial court determined, before trial, that, because plaintiff was unemployed at the time defendant's offer of employment was made to him, he was not a "workman" under § 8–2–104; thus, it dismissed the claim based upon that statute. Later, at the end of plaintiff's presentation of his evidence to the jury, the court determined that he had failed to establish a prima facie case on either of his two remaining claims and dismissed those claims as well.

## I.

Plaintiff argues that the trial court erred in concluding, as a matter of law, that plaintiff's evidence failed to establish a prima facie case of contract breach. He asserts, rather, that, because it is only "presumed" that a contract for an indefinite term creates the relationship of an employment at will, it is for the fact finder in each case to determine whether the parties' relationship was of that nature. In addition, he argues that the evidence would support the reasonable inference that he provided to defendant "special consideration" within the meaning of *Pittman v. Larson Distributing Co.*, 724 P.2d 1379 (Colo.App.1986). We disagree with both these assertions.

## A.

■ In *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo.1987), the supreme court, relying upon prior decisions such as *Johnson v. Jefferson County Board of Health*, 662 P.2d 463 (Colo.1983) ,and *Hughes v. Mountain States Telephone & Telegraph Co.*, 686 P.2d 814 (Colo.App.1984), said that:

An employee who is hired in Colorado for an indefinite period of time is an 'at will employee,' whose employment may be terminated by either party without cause and without notice, and whose termination does not give rise to a cause of action.

The court also noted, however, that this "presumption" is not absolute, but it can be "rebutted" under certain circumstances. *See also Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 104–105 (Colo.1992) ("A basic common-law doctrine was that, in the absence of an explicit contract to the contrary, every employment is presumed to be an 'at-will' employment").

Based upon this latter statement, plaintiff argues that the concept of at-will employment in Colorado is not a matter of substantive law, but is only a presumption. Hence, he argues that, in each case, it is for the fact finder to determine whether an at-will relationship or some other relationship has been established. We disagree.

We do not understand the supreme court references to a "presumption" to refer to an evidentiary presumption that the fact finder may either accept or reject. Rather, as we read *Continental Air Lines* and its progeny, the court, while recognizing the substantive rule that a hiring for an indefinite term creates an employment at-will, used the word "presumption" in emphasizing that it is the burden of the employee to prove any circumstance that would authorize application of one or more of the several exceptions to that rule.

■ Thus, if the evidence shows that the hiring is for an indefinite term, the substantive law of Colorado would allow either party to terminate the relationship at-will. The employee may, however, rebut the effect of that rule by proving that an explicit term of the employment contract restricts the employer's right to discharge (such as an undertaking to discharge only for cause), or that an employer's policy statement restricting such right has been properly accepted as a part of that contract or relied upon by the employee under circumstances giving rise to a promissory estoppel. Also, the employee may prove that his discharge violated Colora-

do's public policy, even though there were no contractual restrictions placed upon the employer's right to discharge at-will. *See Martin Marietta Corp. v. Lorenz, supra; Continental Air Lines, Inc. v. Keenan, supra.*

■ Hence, in a case in which the evidence establishes that there was no definite term of employment agreed upon by the parties, any claim of improper discharge made by the employee must be dismissed, unless the employee produces sufficient evidence to allow the fact finder to determine that one of the foregoing exceptions applies.

Here, plaintiff produced no evidence that the employer agreed, either through explicit undertaking, policy statement, or otherwise, to restrict its right to discharge. He argues, however, that the evidence was sufficient to allow the jury to find that the employment agreement was not for an indefinite term, but contemplated "permanent" employment. We disagree.

■ Plaintiff's evidence was simply that, during his pre-employment interviews, he expressed the desire to obtain stable, permanent employment. At trial, he testified that, by "permanent" employment, he did not mean lifetime employment, but employment only "for 3 to 5 years." There was no evidence, however, that this length of employment was ever discussed with any of defendant's agents.

In *Justice v. Stanley Aviation Corp.*, 35 Colo.App. 1, 530 P.2d 984 (1974), a division of this court held, as a matter of substantive employment law, that:

> In the absence of special consideration or an express stipulation as to the duration of employment, a contract for permanent employment is no more than an indefinite, general hiring terminable at the will of either party.

*See also Lampe v. Presbyterian Medical Center*, 41 Colo.App. 465, 590 P.2d 513 (1978).

Hence, unless the evidence here established that plaintiff provided "special consideration" to defendant, he failed to establish a prima facie case of contract breach.

**B.**

■ *Pittman v. Larson Distributing Co., supra*, 724 P.2d at 1383, relied upon by plaintiff, recognized the rule that a contract for "permanent" employment generally creates no more than "an indefinite general hiring terminable at the will of either party."

There, however, the employee had voluntarily agreed to a reduced salary when he accepted employment, and in addition, he brought with him a sizeable number of customer contacts that he had previously developed. The division concluded that a jury could find that these circumstances represented "special consideration" provided to the employer, so that the employee could not be terminated at will. *See also Beeler v. H & R Block of Colorado, Inc.*, 487 P.2d 569, 573 (Colo.App.1971) (not selected for official publication) ("where an employee has given *additional* consideration *other than services incident to his employment*, a contract for permanent employment or for life employment is valid and enforceable and not against public policy" (emphasis supplied).

The rationale for this rule is that, if the employee gives to the employer consideration beyond that derived from his or her services as an employee, the employee has effectively "purchased" the job and he or she should not be deprived of it easily. *See* Annot., *Validity and Duration of Contract Purporting to be for Permanent Employment*, 60 A.L.R.3d 226 (1974); *Pitcher v. United Oil & Gas Syndicate, Inc.*, 174 La. 66, 139 So. 760 (1932).

Hence, giving up other guaranteed employment, accepting a reduced salary, releasing claims against the employer, or agreeing to purchase property from the employer have all been held, in varying instances, to constitute additional or special consideration supporting the employer's promise to provide permanent employment. *See* Annot., *supra*, at 249–304.

We have discovered no reported case, however, in which the services rendered to the employer have themselves been considered to be such additional or special consideration simply because the value of such services were enhanced by virtue of the employee's

expertise or experience. And, ·the rationale for the special consideration rule convinces us that such expertise or experience alone should not constitute such consideration.

When an employer engages employees to perform services, it is expected that those employees will bring to the accomplishment of those services their best talents and skills and their most diligent efforts. To the extent that such accomplishment requires expertise, such expertise is a necessary part of the services agreed to be provided. It does not constitute additional or special consideration.

Here, plaintiff makes no claim that he provided any consideration to defendant other than the knowledge and expertise that was required for instituting the new program, which was his responsibility under his employment agreement. Accordingly, plaintiff's circumstances do not represent the "special consideration" referred to in *Pittman*.

### C.

■ Finally, we reject plaintiff's argument that defendant's handbook changed his status as an at-will employee. Not only did that handbook contain clear and conspicuous provisions disclaiming any intent to create contractual provisions and reserving the right to change conditions unilaterally, but even if the handbook's provisions were contractually binding on defendant, they created no relevant substantive rights in plaintiff.

The handbook's statement that employees possess at-will employment status, "unless the employee has an executed written contract," must be reasonably interpreted. It means that, if the employee has a written contract which rejects the employee-at-will status and, therefore, conflicts with the handbook, that contract and not the handbook will control. It does not mean that every "executed written contract," including a contract, as the one here, that does not speak to the subject, will vary the handbook's terms.

Plaintiff has presented no evidence of any executed written contract that calls for an employment status other than employment-at-will. This provision of the handbook,

therefore, is inapplicable, and the trial court properly dismissed plaintiff's breach of contract claim.

### II.

We also disagree with plaintiff that the trial court erred in dismissing his claims based upon common law and statutory fraud.

### A.

■ Plaintiff's argument in support of his common law fraud claim is not that defendant's agents made any affirmative misrepresentations to him. Rather, because one of defendant's representatives testified at trial that employee layoffs with defendant were "not uncommon," plaintiff asserts that he should have been informed of this "fact" before he was hired.

The evidence at trial, however, demonstrated that, during the seven months that plaintiff was employed by defendant only 29 employees out of defendant's entire work force, including defendant, lost their jobs. And, although there was a layoff of approximately 200 shortly after plaintiff's dismissal, this layoff resulted from a merger with a German firm of one of defendant's operations in Florida; it was not anticipated, and in any event, it was not the cause of defendant's termination.

The evidence demonstrated beyond dispute that plaintiff was engaged because defendant was undertaking a new program, and he was terminated because defendant decided to abandon that program. There is absolutely no evidence that the representatives who spoke with plaintiff before he was hired (or any other of defendant's agents, for that matter) knew that defendant would later decide to abandon that program. And, plaintiff makes no claim that defendant failed to exercise good faith in making its abandonment decision.

Further, the handbook given to plaintiff specifically advised him that defendant reserved the right to "react to changing circumstances or events as it determines necessary in its business judgment."

The evidence here is unlike that presented in *Berger v. Security Pacific Information*

**56**

*Systems, Inc.,* 795 P.2d 1380 (Colo.App.1990), relied upon by plaintiff. The plaintiff there, who left a business of her own, was hired to manage a program *after* the decision had been made to terminate that program unless certain contingencies were met. Yet, the plaintiff not only was not informed about this decision, but she was affirmatively misled as to the number of customers that were enrolled in the program and as to the financial viability of the employer. After accepting employment, the program she was to manage was abandoned, and she was terminated a short while later. Under those circumstances, a division of this court determined that the employer had a duty to disclose the pertinent facts relevant to the expected continuation of the program for which the plaintiff was hired, and that failure to do so constituted fraud.

In contrast, here, we agree with the trial court that plaintiff failed to establish that defendant had a duty to disclose anything that was not disclosed.

### B.

Section 8–2–104 prohibits the bringing of "workmen" into this state "by means of false or deceptive representations." Because there were no false or deceptive representations made by defendant, plaintiff failed to establish any violation of this statute, irrespective of the definition that might be placed upon the term "workmen." Hence, the trial court committed no error in dismissing the plaintiff's statutory claim.

### III.

In light of the conclusions reached above, we need not address plaintiff's other claims of error.

Judgment affirmed.

ROTHENBERG and PIERCE *, JJ., concur.