John J. DONOHUE, Jr., Plaintiff,

v.

UNIPAC SERVICE CORPORATION, a Nebraska corporation, Edward P. Martinez, Donna DeWispelaere, Paul Tone and Lynette Woodbury, Defendants.

Civ. A. No. 93–K–1082.

United States District Court,
D. Colorado.

April 1, 1994.

Elwyn F. Schaefer, and Ron Chen, Denver, CO, for plaintiff.

Patrick Garcia, and David W. Crockenberg, Pueblo, CO, for defendant.

## ORDER GRANTING SUMMARY JUDGMENT

KANE, Senior District Judge.

This case is before me on the motion for summary judgment by Defendants Unipac Service Corporation, Donna DeWispelaere, Paul Tone and Lynette Woodbury.[1] They argue that: (1) Plaintiff John J. Donohue,

---

1. This motion was brought before Plaintiff amended his complaint, adding Edward P. Martinez as a Defendant on the claims for civil conspiracy and tortious breach of contract. My ruling herein applies to the claims against Mr. Martinez as well.

Jr.'s claims for breach of contract, breach of implied contract and promissory estoppel are barred by language in Unipac's employee handbook establishing an at-will relationship, (2) Donohue has not plead sufficient facts to establish his claim for intentional interference with contractual relations or his related claim for conspiracy, (3) Colorado does not recognize in this context claims for breach of implied covenant of good faith and fair dealing and tortious breach of contract, and (4) there is no evidence of discriminatory intent to support Donohue's claim under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621–634, and his related claim for punitive damages. I agree and grant the motion.

## I. *Facts.*

In June 1988, Donohue was employed as a supervisor in the Office Services Unit of Unipac, a corporation in the loan servicing business. During his tenure, Donohue drafted a manual entitled, "Purchasing Policies and Procedures," which outlined his job responsibilities and the policies and procedures of the unit. In the summer of 1991, and at other times, Donohue reported to company officials that certain departments within the company were not following these procedures. According to Donohue, Defendant Tone, Unipac's senior vice president for operations, commented that Donohue was rocking the boat and stated, "I'll get his ass." In addition, he alleges that Defendants Woodbury, Unipac's human resources manager, and DeWispelaere, Unipac's vice-president of client services, lowered his performance evaluation for "other than a bona fide business purpose," (Third Am. Compl. ¶ 18), and despite the fact that neither was his supervisor.

On August 29, 1991, Donohue was informed that the Office Services Unit and Mailroom Unit were being consolidated into the Administrative/Legal Division and that his position had been eliminated. He was offered an alternative post as a collector, a position for which he felt unqualified and therefore rejected. Donohue was fifty years old at the time of his termination. Wes Price, a twenty-six-year-old male, was named supervisor of the newly restructured Office Services Unit at a salary lower than Donohue's, even though Price allegedly had less experience in purchasing than Donohue.

Donohue asserts nine claims for relief in his third amended complaint. In his first and second claims, he alleges that Unipac breached an express or implied contract for employment by terminating him. In his third and fourth claims, Donohue asserts that Unipac breach its implied covenant of good faith and fair dealing by and is promissorily estopped from not adhering to certain statements in its employee handbook and in the Purchasing Policies and Procedures manual. Donohue's fifth claim alleges that Unipac violated the ADEA by terminating him based on his age. His sixth claim, asserted against Defendants DeWispelaere, Tone and Woodbury, alleges that these parties intentionally interfered with his contractual relations with the company. Similarly, he alleges in his seventh claim that all of the Defendants conspired to terminate him. In his eighth claim, Donohue maintains that Unipac and Martinez tortiously breached his employment contract. Finally, in his ninth claim, Donohue requests punitive damages.

Defendants move for summary judgment on all of Donohue's claims. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In considering this motion, I construe the factual record and reasonable inferences therefrom in the light most favorable to Donohue, the non-moving party. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 527 (10th Cir.1994). The mere allegation of a factual dispute will not defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The non-moving party must point to specific facts, "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves," to avoid summary judgment. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

## II. *Merits.*

A. *Claims Based on Employee Handbook and Purchasing Policies and Procedures Manual.*

■ Donohue's first, second, and fourth claims—for breach of express contract,

breach of implied contract and promissory estoppel, respectively—rest on allegations that language in Unipac's employee handbook and in the Purchasing Policies and Procedures manual created an express or implied employment contract, or at minimum, enforceable promises regarding Donohue's employment with Unipac. In their motion for summary judgment, Defendants argue that the clear and unambiguous language of the employee handbook states that Donohue's employment with Unipac was at-will, thereby negating these claims. In addition, they maintain that terms of the Purchasing Policies and Procedures manual did not concern employment and likewise cannot be used to support these claims.

Donohue responds by arguing that the language in both the 1990 and 1991 employee handbooks disclaiming the creation of an employment contract was ineffective because it was not conspicuous. He attaches to his response a copy of the relevant language of both handbooks. Having read these documents, I cannot see how Donohue can make such an argument.

In both versions, the crucial information is contained on the first page of the handbook. In the 1991 version, the second, short paragraph reads: "The information contained in this handbook applies to all employees of the company. It is presented as a matter of information only and its contents should not be interpreted as a contract between the company and any of its employees." (Pl.'s Am.Resp.Mot.Summ.J., Ex. 7). The fourth and final paragraph, with the underlined and capitalized heading "Employment Relationship," reads:

> Your employment with the Company is voluntarily entered into and you are free to resign at any time with or without notice or reason. Similarly the company is free to conclude an employment relationship where it believes it is in the Company's best interest at any time. While we hope our relationship will be long and mutually beneficial, it should be recognized that neither you, nor we have entered into any contract of employment for a definite period, expressed or implied. Our relationship

is and will always be one of voluntary employment "at will."

*(Id.)* Similarly, the 1990 version discloses in its very first sentence that its purpose is "[t]o establish UNIPAC as an Employment-at-Will employer." *(Id.,* Ex. 8.) It continues with a statement of policy in essence the same as that quoted above. Finally, it reads: "This policy can not be modified by any statement contained in employee handbooks, employment applications, memoranda, or other materials provided to employees in connection with their employment. These documents can not create an expressed or implied contract of employment for a definite period." *(Id.)*

Although the parties appear to dispute which version of the handbook applies, under either version, no express or implied contract or promise of permanent employment was created. *See Redies v. Nationwide Mut. Ins. Co.,* 711 F.Supp. 570, 573 (D.Colo.1989) (under undisputed facts, as a matter of law manual "gave rise to no contract upon which a breach of contract claim could be based and it modified the employment contract in no way"); *Therrien v. United Air Lines, Inc.,* 670 F.Supp. 1517, 1521 (D.Colo.1987) (employee's claims for breach of implied contract and promissory estoppel dismissed where employment materials "state up front that they do not constitute a contract of employment, that the policies and procedures they contain are subject to change and that all employment is 'at will' and may be terminated by the company without cause and in its sole discretion").

Donohue also makes much of a difference between the language of the 1990 and 1991 handbooks, arguing that the 1991 version did not place the same limitation on other documents which might be construed to modify the at-will employment relationship. Therefore, he contends, promises contained in the Purchasing Policies and Procedures manual also support his contract-based claims. In making this argument, it is not clear whether Donohue intends to assert a separate claim for breach of the manual's provisions, or whether he argues that the manual terms modified the employment at-will provisions of

the handbook. In either case, his argument fails.

Donohue complains that Unipac permitted certain departments to circumvent the proper procurement procedures outlined in the manual. If anything, such transgressions damage the company's interests, not Donohue's. Donohue has failed to identify anything in the manual indicating it was intended to create a specific, enforceable benefit running to him personally. Nor has he shown that it contains terms that could remotely be construed as modifying the status of Donohue's at-will employment relationship with Unipac.[2] See Redies, 711 F.Supp. at 573 (sales management policies manual "not the type of employee manual or handbook ... that could modify an existing employment at-will contract"); Corbin v. Sinclair Marketing, Inc., 684 P.2d 265, 267 (Colo.App. 1984) ("mere allegation of termination from employment because of compliance with the employer's safety policy is insufficient to state a claim" for wrongful discharge). The provisions of the Purchasing Policies and Procedures manual are therefore irrelevant to his contract-based claims. Summary judgment is granted on the first, second and fourth claims for relief.

**B.** *Intentional Interference with Contractual Relations and Conspiracy.*

Defendants' second contention is that Donohue fails to properly allege or offer sufficient evidence to support his sixth claim for intentional interference with contractual relations. Since the predicate unlawful act for his seventh claim for conspiracy is intentional interference with contractual relations, this claim is also at issue. Donohue asserts the intentional interference claim against Defendants DeWispelaere, Tone and Woodbury, who are officers or managers at Unipac. He alleges that DeWispelaere and Woodbury improperly lowered his performance evaluation, which led to Price being selected over him as supervisor, and that Tone sought his termination because Donohue was "rocking the boat" by reporting that certain departments had not followed company procedures.[3] He further alleges that these parties, plus Defendants Martinez and Unipac, conspired to interfere with his contractual relations.

Under Colorado law, "even a contract terminable at will is entitled to some protection from tortious interference." *Snoey v. Advanced Forming Technology, Inc.*, 844 F.Supp. 1394, 1400 (D.Colo.1994).

An officer of a corporation generally will not be held personally liable for inducing the corporation's breach of [an at-will] contract with another if the officer is acting within the scope of his official duties. "However, if the officer or director is motivated solely by a desire to induce the corporation to breach its contract with the plaintiff or to interfere with the contractual relations between the corporation and the plaintiff, the interference is improper."

*Meehan v. Amax Oil & Gas, Inc.*, 796 F.Supp. 461, 465 (D.Colo.1992) (quoting *Zappa v. Seiver*, 706 P.2d 440, 442 (Colo.App. 1985)). The defendant's motivation for inducing the breach is generally a question of fact for the jury. *Id.; see also Cronk v.*

---

2. In his supplemental response to the motion for summary judgment, Donohue also contends that Unipac's equal employment opportunity policy, contained in the 1990, 1991, and 1992 handbooks, provides a basis for his contract-related claims. He relies on the Tenth Circuit's recent decision in *Stahl v. Sun Microsystems, Inc.*, 1994 WL 86409 at *2, 19 F.3d 533, 535 (10th Cir. 1994), wherein the court noted that conduct can constitute both a breach of contract and illegal discrimination. As the lower court explained in *Stahl*, however, the plaintiff asserted a claim for breach of an incentive plan, not a claim for wrongful discharge. Therefore, the language in the plan disclaiming an intent to create an employment contract was irrelevant to the case. *See* 775 F.Supp. 1394, 1396 (D.Colo.1991). Here, the express language of the handbook pro-

viding for at-will employment eviscerates Donohue's reliance on its other terms to support his contract-related claims.

3. Donohue also alleges that these parties tolerated or encouraged others to violate the Purchasing Policies and Procedures manual, thereby interfering with his job duties and causing him to be viewed less favorably for the supervisor position. For the reasons already stated, the Purchasing Policies and Procedures are irrelevant to Donohue's claims in this case. Nevertheless, he has failed to point to any evidence that Woodbury, DeWispelaere or Tone's actions in this regard were motivated by anything other than bona fide business concerns.

*Intermountain Rural Elec. Ass'n,* 765 P.2d 619, 623 (Colo.App.1988).

In this case, Donohue has failed to establish any genuine issue of material fact sufficient to send the issue of Defendants' motivation to the jury. In response to the motion for summary judgment, he points to excerpts from the depositions of Woodbury, Kay Schmitz and John Fritschel to support his contention that the Defendants acted for improper purposes. If anything, the excerpts show that Defendants' actions were business-related.

Woodbury stated that she disliked Donohue because he was difficult to work with and did not respond to requests for services in an efficient or cost-effective manner. (Affid. Woodbury at 50–51.) She testified that she selected Price over Donohue because she felt he was the best person for the job and was responsible for programs which resulted in significant cost savings for the company. (*Id.* at 54–56.) Donohue's allegation that Woodbury improperly lowered his performance evaluation likewise has no support. The evidence he offers shows that his scores were lowered to be more consistent with those of other supervisors in light of his alleged inability to work well with other departments. (Affid. Schmidt at 12–14.)

Donohue submits no relevant evidence to support his claim against Tone or DeWispelaere. The deposition excerpts relating to Tone indicate only that he authorized a centralized purchasing system, nothing more. Likewise, Donohue points to evidence that DeWispelaere approached another employee about whether the employee had any knowledge of Donohue taking kickbacks or bribes from vendors. A company's investigation of an employee for allegedly taking bribes is a legitimate business function. Therefore, there being no evidence showing that Woodbury, Tone or DeWispelaere were motivated by solely personal reasons to interfere with Donohue's at-will contract with Unipac, summary judgment on his sixth claim for intentional interference with contractual relations must be granted. Since this claim fails, so does his seventh claim for conspiracy.

## C. Claims for Breach of Implied Covenant of Good Faith and Fair Dealing and Tortious Breach of Contract.

Defendants next argue that Donohue fails to state a claim upon which relief can be granted for breach of implied covenant of good faith and fair dealing or for tortious breach of contract. In *Pittman v. Larson Distributing Company,* 724 P.2d 1379, 1387 (Colo.App.1986), the court expressly declined to accept the plaintiff's invitation to extend the implied covenant of good faith and fair dealing, found in some commercial contracts, to employment contracts. *Id.* Since *Pittman,* many courts have reaffirmed that view. *See, e.g., Redies,* 711 F.Supp. at 572 (dismissing breach of contract and wrongful termination claims based on implied covenant of good faith and fair dealing); *Therrien,* 670 F.Supp. at 1520 n. 3 (noting that Colorado courts do not imply a covenant of good faith and fair dealing in the employment-at-will context); *Farmer v. Central Bancorporation, Inc.,* 761 P.2d 220, 222 (Colo.App.1988).

Donohue attempts to distinguish these cases by arguing that his claim based on the implied covenant does not concern his termination, but "his inability to perform according to UNIPAC's representations despite its statements that it would adhere to the provisions of the Purchasing Policies and Procedures Manual," and his inability to "operate pursuant to the policies and procedures outlined in that document." (Pl.'s Am. Resp.Mot.Summ.J. at 12–13.) This is simply an attempt, through not-so-artful pleading, to avoid the bar of *Pittman.* The manual did not create a contract between Donohue and Unipac. Assuming it did, Donohue was unable to "perform" or "operate" because he was dismissed from his job. He fails to state a claim for breach of implied covenant of good faith and fair dealing arising out of his termination.

Likewise, Donohue fails to state a claim for tortious breach of contract against Unipac and Martinez. Donohue relies on *Davies v. Bradley,* 676 P.2d 1242 (Colo.App. 1983). In that case, the purchasers of a house sued the vendor-builders for breach of the implied warranty of habitability and were awarded exemplary damages, based on the

builders' willful and wanton violations of the building code. The builders in *Davies* had a duty inherent in their contract with the plaintiffs to build the house in a workmanlike manner and sell it in a habitable condition, yet they willfully violated that duty by concealing may defects. *See id.* at 1244–45. In upholding the award of exemplary damages, the appellate court stated:

Exemplary damages are not ordinarily a proper remedy in breach of contract cases. This is because the allegations in an action for breach of contract do not ordinarily bring the case within the confines of the statute. Where, however, as here, the facts alleged and proved establish willful and wanton conduct and reckless disregard for the rights of the plaintiff, the maleficent intent on which exemplary damage awards in tort are based in present, and exemplary damages may be awarded though the action sounds in contract. The punitive and deterrent purposes of the statute authorizing exemplary damages in civil cases are thereby effected.

*Id.* at 1246.

The rationale in *Davies* was rejected by the Colorado Supreme Court in *Mortgage Finance, Inc. v. Podleski*, 742 P.2d 900 (Colo. 1987). There the court reversed the court of appeals which, in reliance on *Davies*, upheld an award of exemplary damages in a contract action. *See id.* at 902; *see also Colorado Interstate Gas Co. v. Chemco, Inc.*, 833 P.2d 786, 792 (Colo.App.1992) (upholding dismissal of tortious breach of contract claim, noting that punitive damages not recoverable for breach of contract "unless conduct constituting the breach is also a tort for which punitive damages are recoverable"), *aff'd*, 854 P.2d 1232 (Colo.1993). Therefore, Donohue likewise fails to state a claim for tortious breach of contract.

D. *Age Discrimination and Related Claims.*

▮▮▮ Defendants' final contention is that Donohue has not met his burden on summary judgment to bring forth evidence that Unipac intentionally discharged him because of his age. The burden shifting process in an age discrimination case is outlined in *Cone v. Longmont United Hospital Ass'n,*

14 F.3d 526, 529 (10th Cir.1994). At the first stage, Donohue must prove a prima facie case of discrimination. To do this, he must show (1) he is within the protected age group, (2) he was doing satisfactory work, (3) he was discharged, and (4) his position was filled by a younger person. *Id.*

If the plaintiff satisfies the prima facie requirements under the ADEA, then the case enters the next stage. In this second stage, the burden of production moves to the defendant. The defendant has to present a legitimate, nondiscriminatory reason for its action. If the defendant articulates a legitimate, nondiscriminatory reason for its action, then the burden of persuasion moves back to the plaintiff. In this third stage of the discrimination analysis, the plaintiff must show that age was a determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext. Failure to come forward with evidence of pretext will entitle the defendant to judgment.

*Id.* (citations omitted).

Here, Defendants do not dispute that Donohue has established a prima facie case of age discrimination. They argue instead that he has not come forward with sufficient evidence to establish that Unipac's proffered reasons for not selecting him as supervisor—the company's reorganization and Price's superior performance—were mere pretext for age discrimination. Donohue responds by pointing to evidence that (1) he was replaced by someone who was younger and received lower pay, (2) the consolidation of the two units did not save the company money, (3) he was much better qualified for the supervisor position, (4) Price's performance was not superior, in that the cost savings attributed to his efforts were illusory, (5) Unipac reduced the qualifications necessary for the newly-created supervisor position after his termination, (6) Donohue's performance evaluation ratings were lowered, and (7) Defendant DeWispelaere questioned at the time of Donohue's dismissal whether Donohue would be retiring soon anyway.

"[A] plaintiff who succeeds in establishing a prima facie case does not automatically survive a motion for summary judgment." *McDonald v. Eastern Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1121 (10th Cir.1991). I must still determine " 'whether the evidence, interpreted favorably to the plaintiff, could persuade a reasonable jury that the employer had discriminated against the plaintiff.' " *Id.* (quoting *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1570 (7th Cir.1989)). The plaintiff need not show that age was sole reason for the employer's action, but he must bring forth evidence that age made a difference in its decision. *Lucas v. Dover Corp., Norris Div.*, 857 F.2d 1397, 1400 (10th Cir. 1988).

Donohue has not created a genuine issue of material fact as to whether age was a determining factor in Unipac's decision to terminate him. That Donohue was replaced by a younger person at a lower salary is circumstantial evidence of discrimination which was necessary to establish Donohue's prima facie case. It does not show that Unipac's proffered reasons for terminating him were pretextual. After-the-fact evidence that the budget for the combined Office Services and Mailroom Units exceeded that of the units when they operated separately the previous year is of questionable relevance. This proves only that Unipac's projections of savings to be realized by the consolidation were overly optimistic at the time it decided to reorganize. One cannot reasonably infer on this post-hoc data that the company would have made the decision to consolidate knowing there would not be cost savings simply to get rid of Donohue.

Donohue also asserts there are factual disputes whether Price was as attractive a candidate as Unipac officials believed and whether Donohue possessed superior qualifications for the position; yet, resolution of this dispute only brings into question Unipac's business judgment. Donohue has not pointed to any evidence that the selection process itself was tainted by age, that he was evaluated less favorably because of his age, or that Price was considered the better candidate because of his age.

The sole age-related comment anywhere in the record allegedly came from Defendant DeWispelaere, who, according to the deposition of Kay Schmitz, asked at the time Donohue was let go, "Isn't he going to be retiring soon?." (Affid. Schmitz at 38.) There is no evidence, however, that DeWispelaere participated in the decision to terminate Donohue. Instead, the record indicates that Defendants Martinez and Woodbury made this decision. (*See* Affid. Woodbury at 54.) Thus, DeWispelaere's comment is of no import. *See Cone*, 14 F.3d at 531 ("age-related comments by non-decisionmakers are not material in showing [employer's] action was based on age discrimination").

On this record, I simply cannot conclude that there is sufficient evidence upon which a reasonable jury could conclude that age was a factor in Unipac's decision not to retain Donohue. A similar case was presented in *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793 (10th Cir.1993). There the appellate court upheld summary judgment on the plaintiff's discrimination claim based on the plaintiff's failure to identify facts showing that his employer's motives were pretextual in promoting another employee over him, stating:

> For the most part, Mr. Hooks lacks competent evidence and makes conclusory allegations that he was the better candidate for the warehouse supervisor position. The record does indicate that Mr. Hooks received excellent ratings for ability, performance, conduct, and attendance, but simply alleging evidence equating Mr. Hooks and Mr. Slaymon's ratings is insufficient to raise a factual issue as to pretext. Such evidence tends to show only that Mr. Hooks was indeed qualified for the position, but does not indicate Diamond's decision to promote Mr. Slaymon was in any way disingenuous. Companies are often presented with the dilemma of promoting one employee from a group of employees with excellent backgrounds. Discriminatory intent is not necessarily implicated when one of those qualified employees is not chosen.

*Id.* at 798; *see also Lucas*, 857 F.2d at 1403 (court may not "second-guess business deci-

**1538**

sions made by employers, in the absence of some evidence of impermissible motives"); *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir.1988) (assertion that plaintiff was equally or more qualified than the person retained insufficient to support a finding of pretext). Consequently, summary judgment is granted on Donohue's fifth claim for age discrimination and his request for punitive damages, stated as the ninth claim for relief.

IT IS ORDERED THAT Defendant's motion for summary judgment on Plaintiffs claims is GRANTED and the action is DISMISSED with prejudice.